STATE OF MAINE

YORK, ss.

DISTRICT COURT
LOCATION:  BIDDEFORD
DOCKET NO.  CV-11-383

DONALD SCHNEIDER,

Plaintiff

v.

**JUDGMENT**

PORT PROPERTIES, LTD. And
KAREN CARRAGHER,

Defendants

Mr. Schneider brought a two-count complaint alleging that Port Properties and Ms. Carragher breached their contract to relocate him in rental property or were negligent in their efforts to relocate him.   Port Properties and Ms. Carragher denied these allegations and counterclaimed on the theory of interference with an advantageous relationship.   The case was heard at a non-jury trial on January 11, 2013. The parties were present with counsel.

FACTS

In February, 2011 Mr. Schneider was living at 32 Waterford Green in Kennebunk. He has a long work history of buying and selling antiques.   He also has a long history of collecting antiques, including family heirlooms.   Much of this collection was displayed at his residence.

Port Properties, Ltd. (P.P.L.) is a real estate brokerage which also rents and manages property.   Ms. Carragher rents and manages properties placed for rental with P.P.L.   She is described as an independent contractor.

Ms. Carragher was the rental agent and property manager for the 32 Waterford Green rental property occupied by Mr. Schneider.

In February, 2011 Ms. Carragher, on behalf of the owner of 32 Waterford Green, sent notice to Mr. Schneider that he would have to vacate the Waterford Green property by August 31, 2011. In her letter to Mr. Schneider providing this notice, Ms. Carragher stated: "We will work with you to find an appropriate rental."

P.P.L. had a property in its rental inventory located at 12 Main Street, Kennebunkport. This property was furnished and had certain features which made it difficult to rent. The property owner was in London and was a demanding client.

Ms. Carragher showed the 12 Main Street property to Mr. Schneider on several occasions. After a series of negotiations conducted through Ms. Carragher, Mr. Schneider offered to lease the 12 Main Street property for $1,500/month for one year with an option for a second year. The lease term was to commence on July 1, 2011. Because Mr. Schneider had a history as a good tenant in property managed by P.P.L., Ms. Carragher did not require that he complete the usual rental application or provide references.

The lease proposal was presented to and accepted by Mr. Gendron, the owner of the 12 Main Street property.

Because the 12 Main Street property had been unoccupied for some time, Mr. Schneider asked Ms. Carragher for permission for his housekeeper to clean it before July 1st. Also, because Mr. Schneider had a large collection of fragile items, some of which were valuable, he asked Ms. Carragher for permission to begin moving some items into the garage and "a few" items into the house also before July 1st. Ms. Carragher asked for and received e-mail authority from the owner to permit the cleaning and storage of items in the garage before July 1st.

2

Mr. Schneider arranged for his housekeeper to begin cleaning the 12 Main Street property on June 28th. He also arranged to have a number of items moved to the garage and several items moved into the house that same day.

Also on June 28th, Mr. Gendron's brother visited the property. He was concerned that the number of items moved into the property was in excess of the permission granted. At the same time Mr. Gendron raised concerns with Ms. Carragher about Mr. Schneider's financial ability to make timely rent payments.

On June 29th Mr. Gendron advised Ms. Carragher that he would not sign the lease; that P.P.L.'s services were terminated and that all of Mr. Schneider's property must be removed from 12 Main Street as soon as possible.

Ms. Carragher informed Mr. Schneider of these developments on either June 28th or 29th. Mr. Schneider, who suffers from some disabilities, was very upset. Ms. Carragher asked who could move the property and where should it go? Mr. Schneider indicated that he was too upset to deal with the situation and Ms. Carragher should make arrangements for moving and storing the property until a new rental would be available.

On June 29th Ms. Carragher called Gary's Moving & Trucking and made arrangement to have Mr. Schneider's property removed from 12 Main Street and taken to the Atlantic Mini-Storage facility in Arundel. The move occurred on June 30th. Ms. Carragher testified that the moving and storage plans were approved by Mr. Schneider in advance; Mr. Schneider testified that he asked Ms. Carragher for assistance with moving his property, but did not select or approve the mover or storage facility in advance. Mr. Schneider provided Ms. Carragher with a credit card to pay the moving and storage expenses.

3

Mr. Schneider's property remained in storage from June 30th through late August, 2011, when he moved to a new rental property in Saco. Both Mr. Schneider and Mr. Love, who moved Mr. Schneider's property from the storage facility to Saco, testified that the property had been put in the storage facility in a hap-hazard fashion and some fragile items appeared to have been damaged.

In his complaint Mr. Schneider asserts that P.P.L. and Ms. Carragher were negligent in the manner they conducted the lease negotiations and the manner they arranged for the moving and storage of his property. Further, he claims they breached the contract to find him a new tenancy.

CONCLUSIONS

When P.P.L. and Ms. Carragher agreed to assist Mr. Schneider to find a new rental and undertook negotiations with Mr. Gendron for the lease of the 12 Main Street property they had a duty to act reasonably on behalf of Mr. Schneider. However, I find and conclude that Mr. Schneider has failed to prove negligence on the part of P.P.L. or Ms. Carragher. They secured an agreement from Mr. Gendron to lease the property to Mr. Schneider. They secured approval from Mr. Gendron for Mr. Schneider to begin cleaning the property and to use the garage for storage before the lease term commenced. These were memorialized in e-mail exchanges. Mr. Gendron's decision to renege on the lease agreement – probably an over-reaction on Mr. Gendron's part – was not the result of negligence on Ms. Carragher's part. She acted reasonably with respect to the lease negotiations.

Neither has Mr. Schneider proven that P.P.L. or Ms. Carragher were negligent with respect to the moving and storage arrangements. When Mr. Schneider asked Ms. Carragher to make these arrangements and provided her with a credit card for payment, she called an established moving company to move the property and

4

arranged for it to be stored in an appropriate facility. It appears that the property was not handled with the appropriate care and that some damage occurred, but that was not the result of negligence on Ms. Carragher's part. There has been no showing of negligence by Ms. Carragher with respect to either the selection of the mover or the storage facility.

Nor has Mr. Schneider proven a breach of contract. Assuming a contract existed, Ms. Carragher arranged for Mr. Schneider to lease the 12 Main Street property. Mr. Gendron decided to renege on the lease agreement; perhaps based on incomplete or inaccurate information, or perhaps based on Mr. Schneider's over-reaching with respect to pre-leasing activity at the property. In either case, Mr. Gendron's decision to renege was not caused by a failure on Ms. Carragher's part to assist Mr. Schneider find a new lease.

## COUNTERCLAIM

In the counterclaim P.P.L. and Ms. Carragher assert that Mr. Schneider interfered with an advantageous relationship, specifically the opportunity to earn a commission as rental agents for Mr. Gendron's 12 Main Street property. They assert that Mr. Schneider exceeded the limited permission granted for pre-lease activity at the property.

This claim requires proof that Mr. Schneider 1) made a false representation, 2) of a material fact, 3) with knowledge of its falsity or in disregard of the truth, 4) for the purpose of inducing another to act, and 5) justifiable reliance thereon causing damage. *Grover v. Minette-Mills, Inc.*, 638 A.2d 712 (Me. 1994).

The evidence does not support a finding that Mr. Schneider made false representations to either Ms. Carragher or Mr. Gendron. At best, there was a misunderstanding. Mr. Schneider understood that in addition to the garage, he could

5

store several particularly fragile and valuable items in the house. Mr. Gendron understood that only the garage would be used for storage until the lease was signed. Further, the evidence suggests that Mr. Gendron's decision to renege on the lease was motivated by factors in addition to the storage issue, including Mr. Schneider's ability to meet the rental payments. As Mr. Gendron's June 29th e-mail makes clear, his relationship with P.P.L. and Ms. Carragher broke down for reasons not attributable to Mr. Schneider.

The entries will be as follows:

1) On Mr. Schneider's complaint, judgment for P.P.L. and Ms. Carragher on all counts.

2) On the counterclaim, judgment for Mr. Schneider.

No costs are awarded to any party.

The clerk may incorporate this judgment in the docket by reference.

Dated: February 5 , 2013

G. Arthur Brennan
Justice, Superior Court, Active Retired

ATTORNEY FOR PLAINTIFF:
THOMAS L. DOUGLAS, ESQ.
COOPER & BULL
850 MAIN STREET, SUITE 3
WESTBROOK, ME 04092

ATTORNEY FOR DEFENDANTS':
JEFFREY S. ZDUNCZYK, ESQ.
ZDUNCZYK LAW OFFICE, LLC
PO BOX 771
KENNEBUNK, ME 04043-0771